UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>     Plaintiff,<br><br>v.<br><br>ASHFORD SAN FRANCISCO II LP,<br><br>     Defendant. | Case No. 20-cv-08458-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 13 |

Pending before the Court is Defendant Ashford San Francisco II LLP's ("Ashford's") motion to dismiss Plaintiff Samuel Love's first amended complaint (FAC) pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Docket No. 13 ("Mot."). Also pending before the Court is Ashford's request for judicial notice in support of its motion to dismiss.

For the following reasons, the Court **GRANTS** Ashford's motion to dismiss Mr. Love's claims **with prejudice**. The Court also **GRANTS** Ashford's request for judicial notice.

## I.   BACKGROUND

A.   Factual Allegations In the Complaint

Mr. Love's first amended complaint (FAC) alleges as follows. Plaintiff is a paraplegic California resident who uses a wheelchair for mobility. FAC ¶ 1. Ashford owns and operates the Clancy, an Autograph Collection Hotel located at 299 2nd Street in San Francisco, California (the "Hotel"). *Id.* ¶ 2.

On October 6, 2020, Mr. Love accessed the Hotel's website, located at www.marriott.com/hotels/travel/sfoaw-the-clancy-autograph-collection, to book an accessible room for a trip he was planning to San Francisco in February of 2021. *Id.* at 14–16. The Hotel's

website has a conspicuous "Accessibility" button on its homepage that provides the following information about "accessible areas," "features," and "guest rooms":

**Accessible Areas with Accessible Routes from Public Entrance**
- Business Center
- Concierge desk
- Fitness Center
- Meeting spaces and ballrooms
- Public entrance alternative
- Registration Desk Pathway
- Registration desk
- Restaurant(s)/Lounge(s)

**Accessible Hotel Features**
- Accessible Self-parking
- Meeting room(s) with assistive listening devices
- Self-parking facility, van-accessible spaces
- Self-parking, accessible spaces
- Service animals are welcome
- Valet parking for vehicles outfitted for drivers in wheelchairs
- Elevators

**Guest Room Accessibility**
- Accessible guest rooms with 32" wide doorways
- Accessible route from public entrance to accessible guest rooms
- Alarm clock telephone ringers
- Bathroom grab bars
- Bathtub grab bars
- Bathtub seat
- Deadbolt locks, lowered
- Door night guards, lowered
- Doors with lever handles
- Electrical outlets, lowered
- Flashing door knockers
- Hearing accessible rooms and/or kits
- Roll-in shower
- Shower wand, adjustable
- TTY/TTD available
- TV with close-captioning
- Toilet seat at wheelchair height
- Vanities, accessible
- Viewports, lowered

*Id.* ¶¶ 17–19.  According to Mr. Love, this information is insufficient "to permit a profoundly disabled wheelchair user to have any confidence or come to any conclusions about whether any given hotel room works for him or her."  *Id.* ¶ 22.

2

Mr. Love contends that the Hotel is required by federal regulations to describe the critical areas in the guestroom "in enough detail to permit him to independently assess that the room works for him and that he can book with confidence." *Id.* ¶ 25. More specifically, Mr. Love alleges the Hotel is required to disclose:

- that "the route from the public entrance to the registration desk, to the restaurant, to the exercise room, and to the guestrooms are all a minimum of 36 inches in width;" *id.* ¶ 24;
- that "he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for transfer," *id.* ¶ 26;
- that "the sink provide[s] the knee clearance (27 inches high, 30 inches wide, 17 inches deep)" and "any plumbing under the sink [is] wrapped with insulation to protect against burning contact;" *id.* ¶ 27;
- that "the lowest reflective edge of the [bathroom] mirror is no more than 40 inches high," *id.*;
- that "the toilet seat height is between 17-19 inches (as required by the ADA Standards)" and "that it has the two required grab bars to facilitate transfer", *id.* ¶ 28; and
- "what type of shower is installed," "whether it has an in-shower seat," "that there are grab bars mounted on the walls," "that there is a detachable hand-held shower wand for washing himself," and "that the wall mounted accessories and equipment are all within 48 inches height," *id.* ¶ 29.

Because it lacks this information, Mr. Love contends the Hotel's website violates a regulation issued pursuant to the Americans With Disability Act (ADA) of 1990, which he asserts requires hotels to "*describe* accessible features in the hotels and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." FAC ¶ 23 (quoting 28 C.F.R. 36.302(e)(1)(ii) (the "Reservations Rule")).

Mr. Love also explains in the FAC that he is a "veteran ADA tester," *id.* ¶ 36, who "frequents businesses to determine if they complied with the anti-discrimination mandates of the ADA," and as such "travels to San Francisco on a consistent and regular basis (many times a

3

1  year)," *id.* ¶ 34–36.  More specifically, Mr. Love is planning "to use the [H]otel's website
2  reservation system to book a room and travel to [the Hotel]," *id.* ¶ 36, "sometime between May
3  and June of 2021," *id* ¶ 35, because he "is aware that he needs to return to the hotel website and to
4  patronize the hotel in order to have standing to see that the hotel comes into compliance with the
5  ADA's mandate regarding its reservation policies," *id.* ¶ 36.
6      Mr. Love raises two causes of action in the FAC for violations of (1) Title III of the ADA,
7  42 U.S.C. §§ 12181–12189; and (2) California's Unruh Civil Rights Act (the "Unruh Act"), Cal.
8  Civ. Code § 51-53.  *Id.* ¶¶ 40–47.
9  B.    <u>Ashford's Request for Judicial Notice</u>
10     Ashford asks this Court to take judicial notice of other parts of the Hotel's website, which
11 it contends contradict the FAC's allegations.  For example, Ashford attaches a screenshot of the
12 Hotel's website showing that the Hotel apparently allows users to search for rooms with
13 accessibility features:
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

[Screenshot of Marriott booking page showing Standard Rates and Deals and Packages tabs, with room options: Guest room 1 King ($156/$159), Guest room 2 Queen ($156/$159), Guest room 1 King City view High floor ($161/$164), Guest room 2 Queen City view High floor ($161/$164). Notice states "To book an accessible room, select a room type first."]

See Docket No. 13-2 (Request for Judicial Notice ("RJN")) at Ex. 2.  Once a user clicks on a type of room, they are provided with information about the that room type's "accessible room features:"

[Screenshot titled "Accessible Room Features" listing: This room type offers mobility accessible rooms; This room type offers accessible rooms with roll in showers; This room type offers hearing accessible rooms with visual alarms and visual notification devices for door and phone; This room type offers accessible rooms with transfer showers. Below: "Join Marriott Bonvoy during your booking to enjoy free Wi-Fi at 7,000+ participating hotels"]

5

1  *Id.*  Ashford also attaches a screenshot of its website's accessibility page showing that any
2  potential guest who needs more information about the physical features of the Hotel's accessible
3  room is advised to call a specific phone number:

**Accessibility**                                                                                             Close ∧

For more information about the physical features of our accessible rooms, common areas, or special services relating to a specific disability, please call +1 415-947-0700.

8  *Id.* at Ex. 1.

9  C.  Procedural Background

10  On November 30, 2020, Mr. Love filed his initial complaint, *see* Docket No. 1, which
11  Ashford moved to dismiss for failure to state a claim and for lack of subject matter jurisdiction on
12  December 31, 2020, *see* Docket No. 9.
13  Rather than respond to Ashford's first motion to dismiss, Mr. Love filed the FAC on
14  January 10, 2021.  *See* FAC.  On February 19, 2021, Ashford filed the pending motion to dismiss
15  for failure to state a claim pursuant to Rule 12(b)(6).  *See* Mot.

16  **II.     LEGAL STANDARD**

17  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain
18  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A
19  complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.
20  Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's
21  decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550
22  U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the
23  claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th
24  Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the
25  pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*
26  *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not
27  simply recite the elements of a cause of action [and] must contain sufficient allegations of
28  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

*Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. REQUEST FOR JUDICIAL NOTICE

When ruling on a Rule 12(b)(6) motion to dismiss, a court may, without converting the motion to one for summary judgment, consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  Here, the Court can take judicial notice of the Hotel's website's contents because it is "information posted on certain . . . webpages that [Mr. Love] referenced in the [FAC]." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Moreover, Mr. Love does not oppose Ashford's request for judicial notice. *See* Docket No. 14 ("Opp'n") at 13.

Accordingly, the Court **GRANTS** Ashford's request to take judicial notice of the Hotel's website's contents.  *See* RJN.

### IV. MOTION TO DISMISS

A. ADA Claim

Mr. Love's ADA claim is entirely premised on Ashford's alleged failure to comply with 28 C.F.R. § 36.302(e)(1)(ii), also known in the hospitality industry as the "Reservations Rule."  The Rule requires hotels to "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to *reasonably* permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1)(ii) (emphasis added).

Importantly, the Reservations Rule does not specify exactly what information hotels are "reasonably" required to disclose.  *Id.*  As a result, the Department of Justice (DOJ) received several comments when it drafted the Reservations Rule urging it to "identify the specific

7

accessible features of hotel rooms that must be described in the reservations system." 28 C.F.R. § Pt. 36, App. A, "Title III Regulations 2010 Guidance and Section-by-Section Analysis" (the "2010 Guidance"). The commentators' concern was that, without further clarification, the Reservations Rule "essentially would require reservations systems to include a full accessibility report on each hotel or resort property in its system." *Id.* In response, DOJ provided the following important guidance on the breadth and application of the Reservations Rule:

> The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. *For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices).* Based on that information, many individuals with disabilities will be comfortable making reservations.

*Id.* In other words, if a hotel was built after 1991[1] and in compliance with the ADA Standards for Accessible Design, originally published on July 26, 1991, and republished as Appendix D to 28 C.F.R. part 36 (the "1991 Standards"), then it can satisfy the Reservations Rule by including in its "reservations system" a note that the hotel is accessible and, for each accessible room, a description of the type of room, the size and number of beds, the type of accessible bathing facility, and communications features available in the room.

Ashford correctly argues that Mr. Love's ADA claim fails as a matter of law because the Hotel's website provides *more* information than is required according to the DOJ's interpretation of the Reservations Rule in the 2010 Guidance. Indeed, the website screenshots produced by Ashford show that the Hotel's website specifies that the hotel is accessible, *see* RJN at Ex. 1, and, for each accessible room, describes the general type of room (*i.e.*, "Guest room," "Guest room, City View, High Floor," "Pure Allergy Feather Free"), the size and number of beds (*i.e.*, "1 King,"

---

[1] It is undisputed that the 1991 Standards apply to the Hotel because it was built after 1991. *See* Mot. at 20, n.3; Opp'n at 5.

or "2 Queen"), the type of bathing facility (*e.g.*, "roll in showers"), and communications features available in the room (*e.g.*, "visual alarms and visual notification devices for door and phone"), *id.* at Ex. 2. In addition to what is required under the 2010 Guidance, the Hotel's website also provides that accessible guest rooms are outfitted with thirty-two-inch-wide doorways, accessible route from public entrance to accessible guest rooms, bathroom grab bars, bathtub grab bars, a bathtub seat, lowered deadbolt locks, lowered door night guards, doors with lever handles, lowered electrical outlets, flashing door knockers, adjustable shower wands, toilet seats at wheelchair height, accessible vanities, lowered viewpoints, and other accessibility features for visually impaired and hearing-impaired guests. *Id.* at Ex 1. In fact, the 2010 Guidance only requires hotels to provide this level of detail *after* a reservation is made:

> *[O]nce reservations are made*, some hotels may wish to contact the guest to offer additional information and services. Or, many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information. At that point, *trained staff . . . should be available to provide additional information such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench)*.

2010 Guidance (emphasis added). In sum, the Hotel's website exceeds the requirements of the Reservations Rule as interpreted by DOJ's 2010 Guidance.

Although the Ninth Circuit has not yet decided what disclosures are required to satisfy the Registrations Rule, every district court in this circuit has concluded that a hotel's website complies with the Reservations Rule and the 2010 Guidance if it provides similar information to what was provided here. *See e.g.*, *Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB), 2020 WL 5257868, at *16 (S.D. Cal. Sept. 3, 2020) ("Plaintiffs' contention that '[c]ommon sense dictates that conclusorily stating that its rooms are "accessible" is not enough detail for Plaintiffs to assess whether a hotel or guest room meets their particular accessibility needs,' is dubious [in light of the 2010 Guidance]." (citation omitted)); *Strojnik v. Xenia Hotels & Resorts, Inc.*, No. 19-CV-03082-NC, 2020 WL 3060761, at *3 (N.D. Cal. June 9, 2020) ("[T]he screenshots provided by Strojnik demonstrate that Xenia's website in fact described *some* accessibility features, such as accessible hotel areas and room features. And it is not clear that the ADA requires Xenia to list its

9

compliance or noncompliance with each and every ADA-mandated feature." (citation omitted)); *Strojnik v. Orangewood LLC*, No. CV 19-00946 DSF (JCx), 2020 U.S. Dist. LEXIS 11743, at *19 (C.D. Cal. Jan. 22, 2020) ("[The 2010 Guidance] provides further support that websites need not include all potentially relevant accessibility information; if a website was required to have all relevant information, individuals would not need to call the hotel to get further information."); *Strojnik v. 1315 Orange LLC*, No. 19CV1991-LAB (JLB), 2019 U.S. Dist. LEXIS 185481, 2019 WL 5535766, at *2 (S.D. Cal. Oct. 25, 2019) ("Plaintiff does not cite any authority suggesting a hotel has an obligation to describe to the public the physical layout of its rooms in exhaustive detail without being asked"); *Strojnik v. Kapalua Land Co.*, No. 19-00077 SOM-KJM, 2019 U.S. Dist. LEXIS 165525, at *21 (D. Haw. Aug. 26, 2019) ("Plaintiff fails to cite to any legal authority providing that failure to detail all accessible and inaccessible elements of a public accommodation results in an ADA violation."); *Barnes v. Marriott Hotel Servs., Inc.*, No. 15-CV-01409-HRL, 2017 WL 635474, at *10 (N.D. Cal. Feb. 16, 2017) (Marriott's website stating, "accessible guest rooms have a 32 inch wide opening," listing the areas of the hotel that are accessible, and providing that the hotel offers "mobility accessible rooms" and "accessible rooms with roll in showers" was "appropriate and acceptable" under the Reservations Rule).

In fact, several California district courts have recently concluded that the *identical* disclosures from Marriott's website at issue in the instant case satisfy the Registrations Rule and thus comply with the ADA. *See Lammey v. Spectrum Gateway LLC*, No. 8:21-cv-00104-DOC-KES, slip op at 3 (C.D. Cal. Mar. 22, 2021) ("In sum, the Website provides highly detailed accessibility information about the Hotel facilities and guestrooms, above and beyond the requirements of the 2010 Guidance."); *Love v. KSSF Enters. Ltd*, No. 20-cv-08535-LB, 2021 U.S. Dist. LEXIS 51788, at *8 (N.D. Cal. Mar. 18, 2021) ("The website disclosures here are like those in the cases in the preceding paragraph. Mr. Love does not plausibly plead an ADA claim."); *Arroyo v. AJU II Silicon Valley LLC*, No. 4:20-cv-08218-JSW, slip op. at 5 (N.D. Cal. Mar. 16, 2021) ("The Court concludes that Defendants' website complies with the Reservations Rule."); *Garcia v. Chamber Maid L.P.*, No. CV 20-11699 PA (PDx), 2021 U.S. Dist. LEXIS 49411, at *11 (C.D. Cal. Mar. 15, 2021) ("This Court agrees with Defendant that, based on the allegations in

1    Plaintiff's FAC and the judicially noticeable documents, the descriptions and level of detail
2    provided on Defendant's website are sufficient to comply with the ADA."); *Salinas v. Apple Ten*
3    *SPE Capistrano, Inc. et al*, No. 8:20-cv-02379-CJC-DFM, slip op. at 5 (C.D. Cal. Feb. 18, 2021)
4    ("Defendants' Website provides the accessibility information required to satisfy the ADA.");
5    *Arroyo v. JWMFE Anaheim, LLC*, No. SACV2100014CJCKESX, 2021 WL 936018, at *3 (C.D.
6    Cal. Feb. 16, 2021) ("This information *more than satisfies* Defendant's obligation under §
7    36.302(e)(ii)" (emphasis added)).

8    Notably, the Hotel's website conspicuously states that "[s]hould [Plaintiff or any other
9    potential guest] have further questions about accessibility, [the Hotel staff] would be happy to
10   accommodate [their] needs and can be reached by *phone* or *email*." RJN at Ex. 2 (emphasis
11   added). The words "phone" and "email" in this disclaimer are linked directly to the Hotel's
12   telephone number and email address. *Id.* This is important because the 2010 Guidance
13   acknowledges that "individuals with disabilities may wish to contact the hotel or reservations
14   services for more detailed information," 2010 Guidance, which further supports a finding that the
15   Hotel's website does not violate the Reservation Rule. *See Garcia*, 2021 U.S. Dist. LEXIS 49411,
16   at *14 ("Courts have interpreted [the 2010 Guidance] to mean that a website need not include all
17   potentially relevant accessibility information where an inquiring patron can simply call the hotel
18   for more information."); *Strojnik*, 2020 U.S. Dist. LEXIS 11743, at *21 ("[I]f a website was
19   required to have all relevant information, individuals would not [be directed by the 2010
20   Guidance] to call the hotel to get further information."). For this additional reason, the Court
21   concludes Mr. Love has failed to state a claim that Ashford's website violates the ADA.

22   Mr. Love does not cite a single case where a Court has found the information on the
23   Hotel's website—or anything like it—inadequate under the Reservations Rule. Instead, he argues
24   that all the cases cited by Ashford incorrectly relied on the 2010 Guidance, which he contends is
25   not entitled to deference because it is nothing more than "musings by the DOJ." *See* Docket No.
26   14 ("Opp'n") at 5. But the Ninth Circuit has repeatedly and unequivocally held that the DOJ's
27   guidance on, and interpretation of, ADA regulations is entitled to *Seminole Rock* deference, such
28   that the court "must give [DOJ's] interpretation of its regulations 'controlling weight unless it is

United States District Court
Northern District of California

plainly erroneous or inconsistent with the regulation." *See Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *see also id.* ("[T]he Justice Department's interpretation of its own regulations, such as the Technical Assistance Manual, must also be given substantial deference and will be disregarded only if 'plainly erroneous or inconsistent with the regulation.'" (quoting *Bay Area Addiction Rsch. v. City of Antioch,* 179 F.3d 725, 732 n. 11 (9th Cir.1999)); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir.), *cert. denied,* 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019) ("DOJ's administrative guidance on ADA compliance is entitled to deference"); *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1069 (9th Cir. 2015) ("We have repeatedly held that manuals promulgated by the Department of Justice to interpret the ADAAG, are 'entitled to substantial deference' and 'will be disregarded only if plainly erroneous or inconsistent with the regulation.'" (quoting *Miller*, 536 F.3d at 1028)); *Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014) ("The DOJ's interpretation of its ADA implementing regulations is entitled to 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" (quoting *Miller*, 536 F.3d at 1028)). Under this precedent, the Hotel's website does not violate the Reservations Rule because it complies with the DOJ's 2010 Guidance, which is controlling authority for this Court because it is not plainly erroneous or inconsistent with the Reservations Rule.

At oral argument, Mr. Love also argued that the Hotel's website violates the Reservations Rule, even if its disclosures satisfy the 2010 Guidance, because the disclosures are not sufficiently conspicuous on the Hotel's website. *See* Docket No. 23 ("Hr'g Tr.") at 7:13–8:15. According to Mr. Love, the term "reservations service" in the Reservations Rule only encompasses the exact screen where patrons select and pay for a room (the "booking screen"), not the Hotel's website as a whole, such that Ashford is required to put all the required accessibility disclosures on that screen. *Id.* at 10:21–24. The Court is not persuaded by this argument because nowhere in the applicable statute or regulations is the term "reservations service" defined in such specific terms. *See* 28 C.F.R. §§ 36.101–36.609. Instead, the term "reservations service" read in context applies to the Hotel's entire website; patrons of the Hotel must access the homepage before reaching the booking screen. In any case, the booking screen contains a conspicuous button titled "room

details" that triggers a pop up with the required accessibility disclosures, as the Court has highlighted below:





*See* RJN. The accessibility disclosures are conspicuously linked to the booking screen.

13

Accordingly, the Court **GRANTS** Ashford's motion to dismiss as to Mr. Love's ADA claim.[2]

B. Unruh Act Claim

Mr. Love's Unruh Act claim is predicated on his ADA claim. *See* FAC ¶ 45 ("The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act."). Therefore, [b]ecause [Mr. Love] did not adequately allege a violation of the ADA, he necessarily has not adequately alleged a violation of the Unruh Civil Rights Act." *Whitaker v. Body, Art & Soul Tattoos L.A., LLC*, No. 20-55228, 2021 WL 237321, at *2 (9th Cir. Jan. 25, 2021); *see also Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (9th Cir. 2021) ("The Unruh Act is 'coextensive with the ADA.' Thus, our analysis of Whitaker's ADA claim applies equally to his Unruh Act claim." (quoting *Molski, v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007)).

Accordingly, the Court also **GRANTS** Ashford's motion to dismiss as to Mr. Love's Unruh Act Claim.

V. **CONCLUSION**

For the foregoing reasons, the Court takes judicial notice of the Hotel's website and **GRANTS with prejudice** Ashford's motion to dismiss in its entirety. Further amendment of the FAC would be futile because the undisputed information on the Hotel's website more than satisfies the Reservations Rule. *See Arroyo*, 2021 WL 936018, at *3 (dismissing complaint with prejudice because "the Court [cannot] contemplate how Plaintiff could cure the deficiencies in his Complaint when the undisputed information on Expedia's and Defendant's websites more than satisfy the ADA's requirements"). Accordingly, the Court **DENIES** Mr. Love's request for leave to amend.

///

///

---

[2] The FAC also alleges, in one sentence, that the Hotel's website "failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." FAC ¶ 43. The Court also dismisses this allegation because it is entirely conclusory and unsupported by any facts in the FAC. *See Iqbal*, 556 U.S. at 678.

14

This order disposes of Docket No. 13.  The Clerk of the Court is instructed to issue a judgment and close the case.

**IT IS SO ORDERED**.

Dated: April 15, 2021

_____
EDWARD M. CHEN
United States District Judge